IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| COSMO IMPORT & EXPORT, LLC, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>STUART ANOLIK, *et al.*,<br><br>    Defendants. | Civ. No. **22-cv-1222 PJM** |

MEMORANDUM OPINION

Plaintiffs Cosmo Import & Export, LLC and Outdoor Living, Inc. have filed a Motion to Compel the Depositions of Defendants Stuart Anolik and Anolik & Associates, P.C. (A&A) (ECF No. 69). A&A has filed an opposition (ECF No. 78). No hearing is necessary. D. Md. Local R. 105.6. For the following reasons, the Court will **GRANT** Plaintiffs' Motion to Compel.

I.

Plaintiffs are two Wyoming-based outdoor-furniture companies. *See* ECF No. 1 ¶ 8-9. Anolik is an attorney residing and practicing in the State of Maryland. *See id.* ¶ 10. A&A was for several years a law firm founded and managed by Anolik. *See id.* ¶ 11. Defendant Fidelis Business & Advisory Services, LLC (Fidelis) is a business consultancy that hired Anolik sometime in 2017. *See id.* ¶ 20.

A.

Plaintiffs allege that, beginning in 2016, they retained Anolik and A&A to provide certain tax and legal advice. (They later signed a retainer with Fidelis for the same services when Anolik began working there.) Specifically, Anolik advised Plaintiffs in connection with their acquisition of a "captive insurance" or "group pool" insurance policy from a St. Lucia-

1

based company, Reliant Group & Casualty Insurance ICC, Ltd. (Reliant). *See id.* ¶ 2. The insurance policy apparently guaranteed Plaintiffs the opportunity to reclaim their premiums five years after the date they were paid. Plaintiffs say they transferred approximately $19 million in premiums to Reliant over the life of the policy. *See id.* ¶ 3.

During his representation of Plaintiffs, Anolik allegedly structured a transaction whereby Plaintiffs would assign their premium-return rights to a third party. Anolik purportedly told Plaintiffs (and their principal) that this assignment would "yield tax savings and other business advantages" for them. *Id.* ¶ 30. What Anolik did not tell Plaintiffs was that some people might interpret the assignment as an effort to evade U.S. tax laws. *See id.* ¶ 36.

But that, supposedly, is how Reliant came to view the transaction. *See id.* ¶ 37. After reaching its conclusion that the assignment was "an illegal tax evasion scheme," Plaintiffs say, Reliant unilaterally terminated the policy and kept all of the premiums, again totaling nearly $19 million. *See id.* ¶¶ 37-38.

Another important piece of information Anolik allegedly did not disclose to Plaintiffs was that, for many years, he had a longstanding relationship with Reliant. *See id.* ¶ 55. It was only when a dispute about the assignment arose that Anolik informed Plaintiffs that, while dealing with Plaintiffs, he had simultaneously been representing Reliant. *See id.* ¶¶ 16, 55. In fact, say Plaintiffs, Anolik had previously served as a Director for Reliant and, at all relevant times, his son worked for and was a Director of Reliant. *See id.* ¶ 17.

Plaintiffs claim that Anolik's representation of them was simply a ruse by means of which they would pay Reliant huge sums of money which Reliant would then then keep, based on Reliant's supposed discovery of the unsavory nature of the assignment transaction that Anolik concocted. *See id.* ¶¶ 36-39.

2

**B.**

On May 22, 2022, Plaintiffs filed a four-count Complaint against Defendants in this Court, alleging that they were deprived of their $19 million in premiums because of Defendants' malpractice, breach of fiduciary duties, fraud, and negligent misrepresentations. *See* ECF No. 1. They seek to hold Anolik and A&A directly liable, and Fidelis vicariously liable for the actions of Anolik and A&A. *See id.*

Defendants filed Motions to Dismiss shortly thereafter. Following a hearing, *see* ECF No. 27, the Court denied the Motions to Dismiss based on its conclusion that Anolik's undisclosed relationship with Reliant during the course of his representation of Plaintiffs lent plausibility to each of Plaintiffs' claims. *See* ECF No. 46 at 44-50. Thereafter, the case proceeded with discovery.

On February 9, 2023, Anolik filed a suggestion of Chapter 7 bankruptcy, and the Court stayed the case as to him alone. *See* ECF Nos. 42, 43.

A year later, on February 5, 2024, Plaintiffs filed their present Motion to Compel Anolik and A&A's Depositions. *See* ECF No. 69. A little more than two weeks later, A&A engaged new counsel.

In light of the appearance of new counsel for A&A, on March 13, 2024, the Court entered a Memorandum Order directing the parties to notify the Court whether Plaintiffs' Motion to Compel remained live. *See* ECF No. 74. The parties initially indicated that they might reach a compromise without court intervention. *See* ECF No. 75.

But then, on April 8, 2024, A&A filed for its own Chapter 7 bankruptcy. *See* ECF No. 76. Shortly thereafter, Plaintiffs filed a Status Report advising the Court that neither Anolik nor A&A had attended their duly noticed depositions based on the latter's belief that they did not

3

have to participate in discovery because they were protected from further proceedings by the automatic stay provisions of the bankruptcy code. *See* ECF No. 77. Against this background, Plaintiffs requested that the Court resolve their Motion to Compel. *See id.*

Two weeks later, A&A filed a response to Plaintiffs' Status Report, which the Court treats as an opposition to Plaintiffs' Motion to Compel. *See* ECF No. 78.

## II.

The primary issue for the Court is whether it is appropriate to order Anolik (either in his individual capacity or as a corporate representative for A&A) to be deposed in light of the automatic stays. The short answer is yes.

Under the bankruptcy code, the filing of a petition for bankruptcy automatically stays the "commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case." 11 U.S.C. § 362(a)(1). By its terms, this provision applies "only to actions against a debtor." *Groner v. Miller (In re Miller)*, 262 B.R. 499, 503 (B.A.P. 9th Cir. 2001); *see A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). At the same time, "[i]t is clearly established that the automatic stay does not apply to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor." *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999) (citation omitted).

Notwithstanding these general principles, the Fourth Circuit has recognized that in "unusual situation[s]," an automatic stay may be expanded to protect a nondebtor codefendant. *See Piccinin*, 788 F.2d at 999. Such an "unusual situation" arises when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party

4

defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id.* "An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *Id.*

*Dunnam v. Sportsstuff, Inc.*, Civ. No. 3:07CV322-HEH, 2008 U.S. Dist. LEXIS 4821 (E.D. Va. Jan. 23, 2008), presented such an unusual situation. *See id.* at *7. In that case, the plaintiff brought products liability claims against a manufacturer of a product and a retailer for injuries that the product allegedly caused him. *See id.* at *3-4. During the pendency of the proceedings, the manufacturer filed for bankruptcy. *See id.* at *4-5. The Virginia federal court concluded that the claims against the retailer could not proceed because the manufacturer had agreed to indemnify the retailer for any claims arising out of the design, manufacture, warranties, distribution, sale, or use of its product. *See id.* at *7-8. By operation of the indemnity agreement, any judgment against the retailer would have been the equivalent of a judgment against the debtor-manufacturer. *See id.* at *8. In that court's view, such a scenario equated to an impermissible end-run around Section 362's automatic stay. The Virginia court also found that "additional factors" weighed in favor of staying the claims against the retailer, including the expense of participating in discovery despite not being able to defend in the litigation, and that a stay was preferrable to proceeding in two "nearly identical litigation[s]." *Id.* at *10.

This is not the *Dunnam* case. There has been no suggestion by any party that either Anolik or A&A have agreed to indemnify Fidelis for any of Plaintiffs' claims. Instead, the case at bar is more akin to *In re Bridge*, 600 B.R. 98 (Bankr. D.N.M. 2019), where the debtor was an obstetrician who was alleged to have injured a woman during the delivery of her child. *Id.* at 100. After the child's birth, the patient brought suit in state court against the obstetrician for

medical malpractice and against the hospital where the obstetrician worked for negligent hiring, supervision, and retention. *See id.* Once the obstetrician filed for bankruptcy, the patient sought relief from the automatic stay protecting the obstetrician. *See id.* at 102. The bankruptcy court concluded that stay relief was unwarranted because the patient's claim against the hospital was "not necessarily stayed." *Id.* at 106. The bankruptcy court's analysis was guided by analogizing to the injunction that follows the discharge of a bankruptcy petition. *See id.* at 106. A "discharge injunction does not prevent creditors from pursuing claims against third parties based on alleged wrongful conduct of discharged debtors"; similarly, an automatic stay should not bar vicarious liability claims against a nondebtor codefendant, even if the debtor's wrongful conduct underlies that vicarious liability. *Id.* at 106-07 (collecting cases). In other words, because a discharge injunction and automatic stay serve the similar purpose of protecting a debtor's bankruptcy estate from a creditor's claims, in both scenarios a creditor may still, in pursuit of vicarious liability claims against a third-party, seek to prove the wrongful conduct of a debtor. *See id.*

That said, certain conditions can be put in place to ensure that a creditor does not violate the automatic stay. These include: (1) "acknowledging that all claims against Debtor are stayed, and they are not proceeding to judgment against her; and (2) acknowledging that Debtor would not be bound under any preclusion principles (e.g., collateral estoppel, claim preclusion, res judicata, or issue preclusion)." *Id.*; *see also FDIC v. Shea & Gould*, 95 Civ. 5491 (JFK), 1997 U.S. Dist. LEXIS 10263, at *39 (S.D.N.Y. July 16, 1997) (similar); *accord Groner*, 262 B.R. at 504 (permitting discovery against nondebtor codefendant to proceed with debtor codefendant as non-party witness).

As in *Bridge*, Section 362's automatic stay does not bar Plaintiffs from deposing Anolik (in his personal capacity and corporate capacity for A&A) as a non-party witness to substantiate their still-live vicarious liability claims against Fidelis.

Accordingly, the Court will **GRANT** Plaintiffs' Motion to Compel, subject to the conditions that Plaintiffs acknowledge (1) that all claims against Anolik and A&A are stayed and that Plaintiffs are not proceeding to judgment against those debtors; and (2) that neither Anolik nor A&A will be bound under any preclusion principles if Plaintiffs receive a favorable final judgment on their claims against Fidelis. Anolik and A&A will be **ORDERED** to sit for depositions at a time and place at the convenience of Plaintiffs' attorney. Failure of either deponent and/or their counsel to comply with this directive, or attempts on their parts in any way to obstruct the depositions, may be sanctioned at a later date.

### III.

Although Plaintiffs have not filed an independent motion asking the Court to impose sanctions on Anolik and A&A for what Plaintiffs believe has been their obstructive conduct, Plaintiffs' Status Report indicates that they are prepared to do so. *See* ECF No. 77. Plaintiffs represent that they scheduled Anolik and A&A's depositions for April 10, 2024, but those plans were thwarted as a result of A&A's suggestion of bankruptcy, filed just two days before the scheduled depositions. *See id.* Plaintiffs say their counsel had already flown from California to Washington, D.C. to take the depositions when they learned of A&A's bankruptcy petition. *See id.* Contemplating a motion for sanctions, Plaintiffs aver that they would seek, at a minimum, attorney's fees in connection with counsel's travel from California, presumably to Maryland. *See id.*

For its part, A&A claims that Plaintiffs were told about its bankruptcy filing on April 8, 2024, and that any subsequent acts by Plaintiffs or their counsel to pursue their claims against A&A violated the automatic stay. *See* ECF No. 78. So, flipping the script, A&A says the Court should award attorney's fees to *A&A*, not Plaintiffs. *See id.*

Ample authority suggests that a party may seek sanctions against a debtor if the debtor's objectionable conduct occurred after the debtor's bankruptcy petition was filed. In *Bellini Imports, Ltd. v. Mason & Dixon Lines, Inc.*, 944 F.2d 199 (4th Cir. 1991), the Fourth Circuit held that the automatic stay does not apply to "actions arising post-petition." *Id.* at 202 (citing *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir.), *cert. dismissed*, 487 U.S. 1260 (1988)). Relying on this principle, the Ninth Circuit in *Groner* held that a plaintiff could request and be awarded sanctions based on a debtor's post-petition refusal to participate in discovery. *See* 262 B.R. at 507-08. Since the plaintiff was not "attempting to recover . . . sanctions from estate property," the automatic stay was not implicated. *See id.* at 508.

At this juncture, the Court is not inclined to sanction Anolik and A&A for their failure to appear at the April 10, 2024 depositions. As indicated, however, if Anolik and A&A fail to appear at the depositions permitted by the Court's previous ruling on Plaintiffs' Motion to Compel, Plaintiffs may seek sanctions because they would be targeting *post*-petition conduct. *See Groner*, 262 B.R. at 507-08.

A&A's request for sanctions, apart from its dubiety, is in the wrong court. Violations of an automatic stay are properly presented in the first instance to a bankruptcy court, not a district court. *See, e.g., Budget Serv. Co. v. Better Homes*, 804 F.2d 289, 292 (4th Cir. 1986).

## Conclusion

For the foregoing reasons, the Court **ORDERS** that:

1. Plaintiffs' Motion to Compel the Depositions of Anolik and A&A (ECF No. 69) is **GRANTED** as follows;

    a. Plaintiffs may take the depositions of Anolik and A&A in pursuit of Plaintiffs' claims against Fidelis, on the conditions that Plaintiffs acknowledge (1) that their claims against Anolik and A&A are stayed; and (2) that neither Anolik nor A&A will be bound under any preclusion principles if Plaintiffs receive a favorable final judgment on their claims against Fidelis;

    b. Plaintiffs may set the date, time, and place of the depositions at Plaintiffs' reasonable convenience; and

    c. The failure of any deponent and/or their counsel to comply with this Order, or any attempt to obstruct such deposition, may be subject to sanctions.

A separate Order will **ISSUE**.

May 9, 2024

PETER J. MESSITTE
U.S. District Judge